THE PEOPLE, EX REL. CHARLES T. FLETCHER ET AL., v. NEWTON D. LEE AND ARTHUR HILL.

[See 65 Mich. 557.]

*Replevin—Insufficient bond—Liability of coroner—Evidence—Exempt property.*

1. In a suit against a coroner for his failure to require a new bond in a replevin suit for attached property, on exceptions being taken to the one first given, he may defend by showing that the property was exempt from attachment.
2. The instructions to the jury on the question of exemption are held warranted by the testimony and statements of counsel.

Error to Saginaw. (Gage, J.) Argued April 26 and 27, 1888. Decided October 12, 1888.

Debt on coroner's bond. Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Wheeler, McKnight & Grant,* for appellants.

*D. P. Foote* and *Trask & Smith,* for defendants.

SHERWOOD, C. J.    This is an action brought by plaintiffs against defendants for an alleged violation of the conditions of the official bond of defendant Lee, as coroner of Saginaw county, the defendant Hill being a surety upon the bond.    The violation charged was the failure of the coroner to take a sufficient bond, after exception had been taken to the one given, in a replevin suit; the coroner taking no new bond, but accepting the one already given, which proved to be worthless.

The defendants, as part of their defense, offered evidence to prove, and were allowed to prove, that the property claimed by the plaintiffs, by virtue of the writ of attachment under which it was taken, was exempt from execution or attachment.    Nearly all of the assignments of error relate to receiving evidence offered for this purpose, or to the charge of the court as to the effect of this evidence.    The court held in his charge—

"That where the coroner is sued, the plaintiff in the case claiming that he is damaged because the coroner took insufficient security in an action of replevin, the case in replevin being a case where the title to the property was not determined on its merits and return of the property was asked for, the coroner may show that the defendants in the replevin suit, the sheriff or his deputy, had only a lien or special interest in the property replevined.    He may also show that the defendants' lien was by virtue of a writ of attachment issued at the instance of the plaintiff in his suit against him, and that the property attached and replevied was property belonging to the plaintiff in the replevin suit, and was in part or entirely exempt from seizure under the attachment writ."

The testimony in regard to the property being exempt which was taken on the attachment, and which is sub-

stantially conceded to be undisputed, as stated by the court in his charge, is as follows:

"The statute designs to exempt property to enable a person to carry on the business in which he is wholly or principally engaged. The testimony in the case shows that Mr. Frees had been educated a farmer; that for three or four years he had left that business, and engaged in the business of hardware merchant; that he had sold out that business, and had taken the team in question in part payment for the stock of goods; that from the time he ceased to be a hardware merchant he intended, as soon as he could do so, to resume farming, and he was in the act of carrying out that intention; that from the time that he ceased to do business as a hardware merchant he was seeking to purchase a farm in Saginaw county, or in some other part of the State, where he might obtain one,—a satisfactory farm; and he continued in the pursuit of that until he arrived in Ohio, and there he actually purchased a farm.

"The actual purchase of a farm by a resident of this State is pretty good evidence that he had not only the intention to farm, but that he had taken the permanent preliminary step, viz., the purchase of the farm, to carry out his intention. He says that he needed the team in that business; kept it for that purpose, as I understand the testimony; and, after the property was replevied, used it in that business on that farm. The property was not attached until after he made this purchase of the farm. I think at that time, although he was still a resident of Michigan, and a voter here, he was practically a farmer; was, in fact, a farmer, although his farm was over the border."

The court further said, in closing his charge:

"I think it is the policy of the statute to protect exempt property until he could reach that farm with his family. The exemption laws are not designed for the benefit of the husband alone, but they are designed for the benefit of his family; and the law even permits a wife to sue and recover the value of property that is exempt, certain classes of it, at least, that cannot be sold without her consent, even in case the husband waives his exemption. He cannot waive it without his wife's consent,— certain classes of exempt property. She was in Michigan

with her children, and had a right to be protected; and I therefore hold that, under the evidence in this case, the property was exempt, being worth less than $250, and that class of property that is embraced in the eighth subdivision of the exemption laws."

The court then directed the verdict for the defendants.

We have no doubt of the defendants' right to make the defense offered in this case, and, if they could show that the property attached was exempt at the time it was taken by the sheriff, it would be a good defense. The merits of the defense now made were never passed upon. The right of the sheriff to take the property upon the attachment was not litigated in the replevin suit or elsewhere. The judgment for a return of the property in that suit was not upon the merits, but upon default, and upon the voluntary discontinuance of suit by the plaintiff. It will not do to say that a plaintiff has had his day in court, when he discontinues his suit. The question now made was for the first time litigated in the present case, and was in no wise barred by any action taken before in any of the proceedings had.

If the plaintiffs were liable to Frees in damages for taking this exempt property on the attachment, it is difficult to see how the coroner and his bondsman could be made liable to the plaintiffs for assisting Frees in retaking his property. This cannot be unless Frees or the coroner have in some way, which does not appear in this record, barred themselves from questioning the claim now made upon them. If the property was exempt, neither the sheriff nor the plaintiffs had any right to meddle with it. By taking it from Frees against his will, they acquired no rights in it; and if Frees, by the assistance of the coroner or any other persons, could retake the property, it was his right so to do, without giving bonds to the plaintiffs, and no liability would be incurred to the plaintiffs by the coroner or his bondsman. And there can be no doubt,

we think, in such a case, but that the owner of the property, the coroner, or his bondsman, may show the facts in any suit brought by the plaintiffs, based upon any claim to such property or interest therein. Crock. Sher. § 852; *Case v. Babbitt*, 16 Gray, 278; *Bonnell v. Bowman*, 53 Ill. 460; *Terrell v. State*, 66 Ind. 570; *State v. Hamilton*, 9 Mo. 794; *Henry v. Quackenbush*, 48 Mich. 415; *Dunphy v. Whipple*, 25 Id. 10; *Lindner v. Brock*, 40 Id. 618; *Pearl v. Garlock*, 61 Id. 419 (28 N. W. Rep. 155).

The objections to testimony were mainly based upon the theory that defendants could not show that the property replevied was exempt, and therefore need not be considered. It is claimed by counsel for plaintiffs that whether or not the property was exempt was a fact that should be found by the jury. The facts upon this point, and testimony given to establish them, were undisputed, and, upon the statements of counsel for the parties in relation thereto, fully warranted the court in giving the direction he did to the jury. *Fisher v. McIntyre*, 66 Mich. 681 (33 N. W. Rep. 762).

We find no error in the record, and the judgment must be affirmed.

CHAMPLIN, MORSE, and LONG, JJ., concurred. CAMPBELL, J., did not sit.